Victoria A. Cundiff
Julia G. Mix
Brian M. Hayes
**PAUL HASTINGS LLP**
200 Park Avenue
New York, New York 10166
Phone:  (212) 318-6000
*Attorneys for Defendants*
*L'Oréal USA, Inc. and IT Cosmetics, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHAEL MANCUSO,<br><br>         Plaintiff,<br><br>   -against-<br><br>L'OREAL USA, INC., and IT COSMETICS,<br>LLC,<br><br>         Defendants. | **CASE NO. 1:21-CV-00989-LJL**<br><br>**ORAL ARGUMENT REQUESTED** |

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S**
**<u>COMPLAINT FOR FAILURE TO STATE A CLAIM</u>**

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

PROCEDURAL HISTORY................................................................. 2

RELEVANT FACTUAL ALLEGATIONS ................................................. 2

    I.     MANCUSO ENTERS INTO A NON-COMPETE AGREEMENT WITH DEFENDANTS ................................................................. 3

    II.    MANCUSO RESIGNS AND PLANS TO COMPETE ....................................... 4

    III.   L'ORÉAL RELEASES MANCUSO FROM HER NON-COMPETE OBLIGATIONS AS TO THE GLAMSQUAD POSITION................................. 5

ARGUMENT ................................................................. 6

    A.    Mancuso Fails to State a Claim for Breach of Contract ........................... 7

    B.    Mancuso Fails to State a Claim for Promissory Estoppel......................... 8

    C.    Mancuso Fails to State a Claim for Tortious Interference ........................ 9

        1.    Mancuso Does Not Plead That a Third Party Breached a Contract With Her or that L'Oréal Procured That Breach........... 10

        2.    Mancuso Does Not Plead That Defendants Engaged in Independently Wrongful Acts to Interfere With Her At-Will Glamsquad Agreement as the Law Requires ...................... 11

    D.    Mancuso's Claim for Breach of the Covenant of Good Faith and Fair Dealing Is Duplicative of Her Breach of Contract Claim and Therefore Fails to State a Claim ............................................. 13

    E.    Mancuso Fails to State a Claim for Violation of the New Jersey Wage and Hour Law ................................................................. 13

        1.    Mancuso Does Not Plead She Is a New Jersey Employee ......... 14

        2.    Mancuso Does Not Plead Facts Establishing that the Alleged "Salary and Benefits Continuation" Payments She Places at Issue Are Wages Under the NJWHL........................... 16

    F.    Mancuso Fails to State a Claim for Violation of the Conscientious Employee Protection Act ........................................................ 17

        1.    Mancuso Lacks Standing to Bring a CEPA Claim ..................... 18

        2.    Mancuso's Threadbare Allegations in Support of Her CEPA Claim Are Insufficient to Survive a Rule 12(b)(6) Motion to Dismiss.................................................... 18

CONCLUSION........................................................................ 21

# TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page(s)**

*Allegrino v. Ruskin Faltischek, P.C.*,
   No. 19-CV-08900 (PMH), 2021 WL 429121 (S.D.N.Y. Feb. 8, 2021) ...................................7

*Anthem, Inc. v. Express Scripts, Inc.*,
   No. 16 CIV. 2048 (ER), 2017 WL 1134765 (S.D.N.Y. Mar. 23, 2017)................................13

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009).....................................................................................................3, 6, 7

*Bader v. Wells Fargo Home Mortg. Inc.*,
   773 F. Supp. 2d 397 (S.D.N.Y.2011)..........................................................................9

*Battaglia v. United Parcel Serv.*,
   214 N.J. 518, 70 A.3d 602 (N.J. 2013) ...............................................................20

*Bintliff–Ritchie v. Am. Reinsurance Co.*,
   285 Fed. Appx. 940 (3d Cir. 2008) ...................................................................17

*Brangan v. Ball Plastic Container Corp.*,
   Civil No. 11-5470, 2012 WL 1332663 (D.N.J. Apr. 17, 2012)..............................19

*Connelly v. Lane Const. Corp.*,
   809 F.3d 780 (3d Cir. 2016)................................................................................20

*Cuff v. Camden City Sch. Dist.*,
   No. 1:18-cv-13122-NLH-AMD, 2019 WL 1950400 (D.N.J.), *aff'd*, 790 F.
   App'x 413 (3d Cir. 2019)...........................................................................20

*D'Agostino v. Johnson & Johnson, Inc.*,
   133 N.J. 516, 628 A.2d 305 (1993).....................................................................15

*DaBronzo v. Roche Vitamins, Inc.*,
   232 F. Supp. 2d 306 (D.N.J. 2002) ...............................................................21

*Donelson v. DuPont Chambers Works*,
   206 N.J. 243, 20 A.3d 384 (N.J. 2011) .............................................................21

*Dorsett-Felicelli, Inc. v. County of Clinton*,
   No. 1:04-CV-01141, 2011 WL 1097859 (N.D.N.Y. Mar. 22, 2011) .....................11

*Dubler v. Hangsterfer's Labs.*,
   Civil No. 09-5144 (RBK/JS), 2012 WL 714130 (D.N.J. Mar. 5, 2012)................17

*Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*,
   50 N.Y.2d 183, 428 N.Y.S.2d 628 (N.Y. 1980) ...............................................11, 12

*Hargrove v. Sleepy's, LLC*,
   220 N.J. 289, 106 A.3d 449 (2015)........................................................................15

*Harris v. Provident Life & Accident Ins. Co.*,
   310 F.3d 73 (2d Cir. 2002)....................................................................................13

*Joseph v. Leavitt*,
   386 F. Supp. 2d 487 (S.D.N.Y. 2005)....................................................................7

*Kirch v. Liberty Media Corp.*,
   449 F.3d 388 (2d Cir. 2006)..................................................................................10

*Koeppel v. Schroder*,
   122 A.D.2d 780, 505 N.Y.S.2d 666 (N.Y. App. Div. 1986) .................................12

*Kolb v. Burns*,
   320 N.J. Super. 467, 727 A.2d 525 (N.J. Super. Ct. App. Div. 1999)....................19

*Krim Cartage Co. v. Courier Services, Inc.*,
   52 A.D.2d 831, 384 N.Y.S.2d 164 (N.Y. App. Div. 1976) ...................................11

*Leadsinger, Inc. v. Cole*,
   No. 05 Civ. 5606 (HBP), 2006 WL 2320544 (S.D.N.Y. Aug. 10, 2006)...............10

*Lupian v. Joseph Cory Holdings, LLC*,
   240 F. Supp. 3d 309 (D.N.J. 2017) .......................................................................15

*Lupian v. Joseph Cory Holdings, LLC*,
   905 F.3d 127 (3d Cir. 2018)..................................................................................15

*Magnetic*, 293 F. 94, 97 (D.N.J. 1923) .........................................................................17

*Maricultura del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*,
   769 F. App'x 44 (2d Cir. 2019).............................................................................10

*Matusovsky v. Merrill Lynch*,
   186 F. Supp. 2d 397 (S.D.N.Y. 2002)....................................................................7

*Maw v. Advanced Clinical Commc'ns, Inc.*,
   179 N.J. 439, 846 A.2d 604 (N.J. 2004) ...............................................................20

*In re Merrill Lynch & Co., Inc.*,
   273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch
   & Co.*, 396 F.3d 161 (2d Cir. 2005).......................................................................3

*Michaelgreaves v. Gap, Inc.*,
   Civil Action No. 11-6283 (SDW), 2013 WL 257127 (D.N.J. Jan. 23, 2013) .........20

*Mill Fin., LLC v. Gillett*,
    122 A.D.3d 98, 992 N.Y.S.2d 20 (1st Dep't 2014) .............................................................13

*Moran v. DaVita, Inc.*,
    Civil Action No. 06-5620 (JAP), 2009 WL 792074 (D.N.J. Mar. 23, 2009),
    *aff'd in relevant part*, 441 F. App'x 942 (3d Cir. 2011)..............................................17

*Mulford v. Computer Leasing, Inc.*,
    334 N.J. Super. 385, 759 A.2d 887 (N.J. Super Ct. Law. Div. 1999) ....................................15

*NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*,
    87 N.Y.2d 614, 641 N.Y.S.2d 581 (1996) ....................................................................10, 11

*Norris v. Harte–Hanks, Inc.*,
    122 F. App'x. 566 (3d Cir. 2004) ........................................................................................18

*NRP Holdings LLC v. Buffalo Urban Renewal Agency*,
    No. 11-CV-472S, 2013 WL 5276540 (W.D.N.Y. Sept. 17, 2013), *aff'd sub
    nom. NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177 (2d Cir. 2019). .............................9

*Ortiz v. Goya Foods, Inc.*,
    Civil Action No. 19-19003 (SRC), 2020 WL 1650577 (D.N.J. Apr. 3, 2020).................15, 16

*Overton v. Sanofi-Aventis U.S., LLC*,
    Civil Action No. 13-5535 (PGS), 2014 WL 5410653 (D.N.J. Oct. 23, 2014) ........................16

*Page v. U. S. Agency for Global Media*,
    797 F. App'x 550 (2d Cir. 2019) ............................................................................................3

*Papalini v. Sensient Colors, Inc.*,
    Civil Action No. 11-6392, 2012 WL 1345353 (D.N.J. Apr. 18, 2012)...................................18

*Parisi v. Wipro Ltd.*,
    No. 16 Civ. 1824 (PAE), 2016 WL 6905987 (S.D.N.Y. Nov. 23, 2016) ................................18

*Paxi, LLC v. Shiseido Americas Corp.*,
    636 F. Supp. 2d 275 (S.D.N.Y. 2009)......................................................................................9

*Redick v. E. Mortg. Mgmt., LLC*,
    Civil Action No. 11-1260-GMS-CJB, 2013 WL 1089710 (D. Del. Mar. 15,
    2013) ......................................................................................................................................14

*Reed, Roberts Assocs. v. Strauman*,
    40 N.Y.2d 303, 353 N.E.2d 590 (1976)..................................................................................12

*Seven Star Shoe Co. v. Strictly Goodies, Inc.*,
    657 F. Supp. 917 (S.D.N.Y. 1987) .........................................................................................11

*Stovall v. Grazioli*,
  Civil No. 16-4839, 2019 WL 2417497 (D.N.J. June 10, 2019)................................20

*Tabachnik v. Dorsey*,
  No. 04 CIV. 9865 (SAS), 2005 WL 1668542 (S.D.N.Y. July 15, 2005), *aff'd*,
  257 F. App'x 409 (2d Cir. 2007) ............................................................................7

*Thales Alenia Space Fr. v. Thermo Funding Co.*,
  No. 13-cv-712 (SAS), 2014 WL 3887711 (S.D.N.Y. Aug. 7, 2014)........................8

*Turner v. Associated Humane Societies, Inc.*,
  396 N.J. Super. 582, 935 A.2d 825 (N.J. Super Ct. App. Div. 2007)....................20

*Tutt v. Aufrecht*,
  46 N.J. Super. 252, 134 A.2d 536 (N.J. Super Ct. Law Div. 1957) ......................17

*Winslow v. Corporate Express, Inc.*,
  364 N.J. Super. 128, 834 A.2d 1037 (N.J. Super Ct. App. Div. 2003)..................15

*Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*,
  736 F. Supp. 2d 661 (W.D.N.Y. 2010) ...................................................................7

*Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*,
  946 F.2d 1003 (2d Cir. 1991)...................................................................................8

*Yucis v. Sears Outlet Stores, LLC*,
  813 F. App'x 780 (3d Cir. 2020) ...........................................................................20

**Statutes**

N.J.S.A.
  § 34:11-4.1(c)........................................................................................................16

## PRELIMINARY STATEMENT

Plaintiff Rachael Mancuso is the rare former employee who sues not to avoid or violate a post-employment restrictive covenant, but to insist that it be enforced.  She has sued her former employer, L'Oréal USA, Inc. ("L'Oréal"), and its business unit Defendant IT Cosmetics, LLC ("IT" and, with L'Oréal, "Defendants"), complaining that L'Oréal wrongly *released* her from her non-compete obligations as to a L'Oréal competitor, Glamsquad, Inc. ("Glamsquad").

Mancuso alleges a variety of claims for breach of contract, contract-like claims, and New Jersey statutory claims, all of which fail to state a cause of action upon which relief can be granted.  The thrust of Mancuso's complaint is that despite this release, she should nonetheless be paid for the obligation from which she has been released.  She alleges that L'Oréal's failure to do so constitutes a breach of contract.  In making this claim, she ignores the clear language of the agreement at issue as well as basic contract law.  There is no breach of contract as a matter of law because neither party has ongoing obligations.

Her claims in near-contract—promissory estoppel and breach of the covenant of good faith and fair dealing—are grounded in the same operative facts.  They fare no better because they do not allege necessary elements and are redundant of the contract claim, thereby also failing as a matter of law.  Mancuso's claim for tortious interference is defective: she does not allege, as she must, that a third party breached a contract with her or that L'Oréal's actions induced the breach.  Moreover, the Glamsquad contract at issue which *she* elected to walk away from was an at-will contract, as to which a claim for tortious interference does not lie under the facts alleged.  To the extent that her claim is a claim for tortious interference with a prospective relationship it fails because she does not allege that L'Oréal engaged in any independently wrongful acts.  Finally, the claims for violation of the New Jersey Wage and Hour Law and

retaliation under the New Jersey Conscientious Employee Protection Act fail because Mancuso is not a New Jersey employee and is not protected by those Acts; the monies Mancuso seeks under the Wage and Hour law are not wages as defined by that statute; and she fails to state a claim under either statute.

For all of these reasons, and as described in greater detail below, the Complaint should be dismissed for failure to state a claim under Fed. R .Civ. P. 12(b)(6).

## PROCEDURAL HISTORY

Despite the fact that the parties agreed, pursuant to a mandatory forum selection clause, to submit these disputes to the exclusive venue of either the New York County state court or this Court, Mancuso initially filed suit in the United States District Court for the District of New Jersey.  On June 15, 2020, Defendants moved the District of New Jersey to transfer the suit to this Court pursuant to 28 U.S.C. § 1404(a), or in the alternative, to dismiss Mancuso's Complaint for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6).

The District of New Jersey agreed with Defendants that Mancuso had violated the parties forum selection clause, and thus transferred the case to this Court by Order dated February 1, 2021 (ECF No. 13) (the "Transfer Order," a copy of which is attached as Exhibit F to the Declaration of Victoria A. Cundiff filed herewith).  The District of New Jersey did not reach Defendants' alternate request to dismiss the case for failure to state a claim, but instead denied that portion of Defendants' motion without prejudice.  (*Id*.)

## RELEVANT FACTUAL ALLEGATIONS

In support of their motion, Defendants rely on the Complaint's factual allegations and the contents of the documents explicitly referenced and relied upon in the Complaint but not attached to the Complaint.  For the convenience of the Court, those documents appear as exhibits

to the Cundiff Declaration filed herewith.[1]  Defendants acknowledge that the well-pleaded

allegations of the Complaint are to be treated as true on a motion to dismiss.  *Page v. U. S.*

*Agency for Global Media*, 797 F. App'x 550, 554 (2d Cir. 2019).  However, "this tenet is

'inapplicable to legal conclusions' and '[t]hreadbare recitals of the elements of a cause of action,

supported by mere conclusory statements, do not suffice.'"  *Id*. (quoting *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009)).

## I.   MANCUSO ENTERS INTO A NON-COMPETE AGREEMENT WITH DEFENDANTS

Mancuso was hired by IT in November 2013 as a Senior Manager – Home Shopping.

(Compl. ¶ 8).  Upon her hire, Mancuso and IT entered into a Non-Competition and

Confidentiality Agreement (Compl. ¶ 9) (the "NCA," attached to the Cundiff Declaration as

Exhibit A).  The NCA is governed by New York law.  (Cundiff Decl. Ex. A ¶ 17).  By executing

the NCA, Mancuso agreed not to compete with IT or to solicit customers of IT for two years

following the termination of her employment with IT.  (Compl. ¶ 10; Cundiff Decl. Ex. A ¶ 5).

In the summer of 2016, L'Oréal acquired IT.  (Compl. ¶ 11).[2]  IT became a business unit within

L'Oréal (Defendants' Rule 7.1 Corporate Disclosure Statement (ECF No. 7)), and L'Oréal

became Mancuso's employer.  (Compl. ¶¶ 1, 3, 12–14).  Mancuso, an out-of-state resident

(Compl. ¶ 2) worked remotely, engaging in what she describes as periodic in-person meetings in

New Jersey.  (Compl. ¶ 15).

---

[1] "In deciding a Rule 12(b)(6) motion, the Court may consider . . . documents integral to the complaint and relied upon in it, even if not attached or incorporated by reference."  *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 356 (S.D.N.Y. 2003) (internal quotation marks omitted), *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

[2] The NCA provides that "All rights and obligations of the Company pursuant to this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Company."  (Cundiff Decl. Ex. A ¶15).

On December 18, 2017, L'Oréal and Mancuso entered into an Employee Retention Agreement to incentivize Mancuso to remain employed for two years (Compl. ¶ 12) (the "Retention Agreement," attached to the Cundiff Declaration as Exhibit B).  The Retention Agreement contained an integration clause (Compl. ¶ 13) stating that it "sets forth the entire agreement of the Parties hereto **in respect of the subject matter contained herein.**"  (Compl. ¶ 13) (Cundiff Decl. Ex. B ¶ 4.5) (emphasis added).  The Retention Agreement did not contain any restrictive covenants—post-employment or otherwise—owed by Mancuso to Defendants, nor did it mention or purport to vary the existing NCA.  (Compl. ¶ 14; Cundiff Decl. Ex. B).

In the Transfer Order, the District of New Jersey found that the Retention Agreement did not supersede the NCA, as the two contracts "address different aspects of Plaintiff's employment."  (Cundiff Decl. Ex. F, p. 7).

## II.   <u>MANCUSO RESIGNS AND PLANS TO COMPETE</u>

After remaining with L'Oréal for more than two years and collecting her retention payment, Mancuso gave notice on January 17, 2020 that she was resigning from L'Oréal effective January 31, 2020.  (Compl. ¶¶ 18–20).  After initial discussions concerning the possibility of Mancuso's performing consulting services for L'Oréal did not come to terms (Compl. ¶¶ 21, 27; Cundiff Decl. Ex. E), Mancuso told L'Oréal she planned to perform consulting services for another organization in the cosmetics industry, Glamsquad, and provided L'Oréal with a copy of her Independent Contractor Services Agreement with Glamsquad (Compl. ¶¶ 1, 26) (the "Glamsquad Agreement," attached to the Cundiff Declaration as Exhibit C).

The Glamsquad Agreement, executed February 1, 2020, provided that Mancuso's consulting services for Glamsquad would be terminable for cause at any time (*id*. ¶ 6.3), and for

convenience on thirty days' notice (*id.* ¶ 6.2).  It also included a provision requiring Mancuso to represent and warrant to Glamsquad that "there is no other existing contract, obligation or duty on Contractor's part that is inconsistent with this Agreement."  (*Id.* ¶ 4.2).

In response to Mancuso's request, in an email dated February 10, 2020, L'Oréal informed Mancuso that it intended to enforce her non-compete agreement as to Glamsquad.  (Compl. ¶ 29).  L'Oréal agreed to modify the NCA, however, by reducing the restriction from two years to one year and promised to continue to pay Mancuso her full salary and benefits "during the period of enforcement." (Compl. ¶¶ 31–32).  This amendment, to which Mancuso refers in her Complaint (the "NCA Amendment"), is attached to the Cundiff Declaration as Exhibit D.[3] L'Oréal did not modify any other terms of the NCA.  Mancuso accepted this modification and indeed relies upon the NCA Amendment as the basis for every one of the claims she asserts, alleging that it created a valid and enforceable agreement. (Compl. ¶¶ 32–34, 36, 50; *see also* Transfer Order, Cundiff Decl. Ex. F, p. 9).

In the Transfer Order, the District of New Jersey held that the NCA Amendment "was intended to, and did, modify the NCA."  (Cundiff Decl. Ex. F, p. 9).

## III.   L'ORÉAL RELEASES MANCUSO FROM HER NON-COMPETE OBLIGATIONS AS TO THE GLAMSQUAD POSITION

L'Oréal paid Mancuso under the NCA Amendment as required on March 6, 2020. (Compl. ¶ 42).  On March 9, 2020, L'Oréal notified Mancuso by letter that it would "no longer enforce" the non-compete contained in the NCA Amendment as to the Glamsquad position, (Compl. ¶ 27) (the "Release Letter" is attached to the Cundiff Declaration as Exhibit E) and

---

[3] Mancuso styles this email amendment to the NCA "the Separation Terms" in her Complaint, even though that language does not appear in the document.  (Compl. ¶ 36; Cundiff Decl. Exhibit D).  As she alleges, she resigned voluntarily.  (Compl. ¶ 19).

accordingly made no further payments to Mancuso under that Amendment.  (Compl. ¶ 43).

Upon receipt of the Release Letter, Mancuso became free, for the first time, to perform

consulting services for Glamsquad immediately, and, for the first time, to make Glamsquad's

required representations and warranties regarding her non-competition obligations.  (Cundiff

Decl. Ex. C ¶ 4.2).  Consistent with the terms of the NCA Amendment, in the Release Letter

L'Oréal advised Mancuso to inform it of other future job offers during the non-compete period

so that L'Oréal could determine whether the NCA had been triggered, in which case L'Oréal

would reinstate her to payroll "during any period in which we enforce your Non-Competition

Agreement." (Cundiff Decl. Ex. E).

Mancuso complains that by excusing her from her non-compete obligations as to

Glamsquad, L'Oréal has breached the NCA Amendment (Compl. ¶¶ 49–54), in the alternative

owes damages under principles of promissory estoppel (Compl. ¶¶ 55–59), breached the duty of

good faith and fair dealing (Compl. ¶¶ 67–72), tortiously interfered with the (at-will) Glamsquad

Agreement or expectancy (Compl.¶¶ 60–66), and violated two New Jersey statutes designed to

protect New Jersey employees, the New Jersey Wage and Hour Law (Compl. ¶¶ 73–77) and the

Conscientious Employee Protection Act (Compl. ¶¶ 78–82) by failing to pay her under the NCA

Amendment.  As described below, Mancuso's Complaint should be dismissed because it does

not allege facts that state a claim for relief under any of Mancuso's claims.

## ARGUMENT

For a complaint to survive a motion to dismiss for failure to state a claim under Rule 12(b)(6), it

"must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

plausible on its face.'"  *Iqbal*, 556 U.S. at 678 (citation omitted).  But "the tenet that a court must

accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."

*Id*.  Further, "[t]o the extent a plaintiff's allegations are contradicted by a document attached to the complaint as an exhibit, or incorporated by reference, or by documents that are integral to, or explicitly referenced in, the pleading, the plaintiff's allegations are simply insufficient to defeat a motion to dismiss."  *Allegrino v. Ruskin Faltischek, P.C.*, No. 19-CV-08900 (PMH), 2021 WL 429121, at *6 (S.D.N.Y. Feb. 8, 2021) (citing *Matusovsky v. Merrill Lynch*, 186 F. Supp. 2d 397, 400 (S.D.N.Y. 2002)).  Finally, a complaint will not withstand a motion to dismiss if it "fail[s] to state a legally cognizable cause of action."  *Tabachnik v. Dorsey*, No. 04 CIV. 9865 (SAS), 2005 WL 1668542, at *1 (S.D.N.Y. July 15, 2005), *aff'd*, 257 F. App'x 409 (2d Cir. 2007); *Joseph v. Leavitt*, 386 F. Supp. 2d 487, 488 (S.D.N.Y. 2005) (granting motion to dismiss where "[the plaintiff] has no legally cognizable cause of action").

As set forth below, Mancuso fails to state a claim for any of the six causes of action alleged.  Her Complaint should be dismissed.

### A.    Mancuso Fails to State a Claim for Breach of Contract

To state a claim for breach of contract under New York law, a plaintiff must allege "(1) a contract; (2) performance by the party seeking recovery; (3) breach of the contract by the other party; and (4) damages attributable to the breach."  *Wolf Concept S.A.R.L. v. Eber Bros. Wine & Liquor Corp.*, 736 F. Supp. 2d 661, 672 (W.D.N.Y. 2010) (citation omitted).

Mancuso alleges that the NCA Amendment was a valid and enforceable contract between the parties and that Mancuso performed under the NCA Amendment.  (Compl. ¶¶ 50–51). However, Mancuso's claim that L'Oréal USA breached the NCA Amendment by "fail[ing] to continue [her] salary and benefits" is clearly contradicted by the terms of the NCA Amendment itself.  (Compl. ¶ 52).  The NCA Amendment states Mancuso "will continue to receive [her] base pay *during the period of enforcement*."  (Cundiff Decl. Ex. D, at 1) (emphasis added).  She did.

(Compl. ¶ 42).  But L'Oréal released Mancuso from enforcement of the contract as to Glamsquad (Compl. ¶ 43; Cundiff Decl. Ex. E)—thereby ending the period of enforcement and discharging L'Oréal's reciprocal obligation to pay her "during the period of enforcement."  The contract does not require L'Oréal to pay Mancuso other than during the period of enforcement. This fact is underscored by the provisions of the Release advising Mancuso to inform the Company of future job offers during the non-compete period so that L'Oréal could determine whether her Non-Competition Agreement had been triggered and if so, reinstate her to payroll "during any period in which we enforce your Non-Competition Agreement." (Cundiff Decl. Ex. E).

L'Oréal's decision to release Mancuso from her obligations under the NCA Amendment does not constitute a breach of contract since L'Oréal was simply exercising and discharging its contractual rights.  *See*, *e.g.*, *Thales Alenia Space Fr. v. Thermo Funding Co.*, No. 13-cv-712 (SAS), 2014 WL 3887711, at *4 (S.D.N.Y. Aug. 7, 2014) (citing Restatement (2d) of Contracts § 284(1)) ("[O]ne party to an agreement may release another of a duty owed to the maker of the release, and thus discharge the duty upon the occurrence of any conditions provided for in the release."); *see also Wolff & Munier, Inc. v. Whiting-Turner Contracting Co.*, 946 F.2d 1003, 1009 (2d Cir. 1991) ("Waiver is 'an intentional abandonment or relinquishment of a known right or advantage which, but for such waiver, the party would have enjoyed.' . . . [Any] contractual provision . . . 'may be waived by implication or express intention of the party for whose benefit the provision inures.'") (citations omitted).

### B.    Mancuso Fails to State a Claim for Promissory Estoppel

Under New York law, "[p]romissory estoppel is a legal fiction which is used as consideration for contractual consideration where a party relies, to its detriment, on the promises

of another *without having entered into an enforceable contract*." *Paxi, LLC v. Shiseido Americas Corp.*, 636 F. Supp. 2d 275, 287 (S.D.N.Y. 2009) (emphasis in original). "It is a narrow doctrine which generally only applies where there is no written contract, or where the parties' written contract is unenforceable for some reason." *Id*. Accordingly, "a party asserting [a] promissory-estoppel claim must allege 'duties independent of the agreement' [ ] when an enforceable agreement exists." *NRP Holdings LLC v. Buffalo Urban Renewal Agency*, No. 11-CV-472S, 2013 WL 5276540, at *4 (W.D.N.Y. Sept. 17, 2013) (quoting *Randall's Island Aquatic Leisure, LLC v. City of New York,* 92 A.D.3d 463, 464, 938 N.Y.S.2d 62 (1st Dep't 2012)), *aff'd sub nom. NRP Holdings LLC v. City of Buffalo*, 916 F.3d 177 (2d Cir. 2019). "This is sensible; 'when an enforceable contract does exist, the parties cannot assert a claim for promissory estoppel based on alleged promises that contradict the written contract.'" *Id.* (quoting *Bader v. Wells Fargo Home Mortg. Inc*., 773 F. Supp. 2d 397, 415 (S.D.N.Y.2011) (brackets and other citation omitted)).

Here, of course, Mancuso alleges that a contract *does* exist. (Compl. ¶¶ 49–54). None of her allegations on her alternative claim for promissory estoppel allege any supposed independent duties that the Defendants had outside of the parties' contract. The allegations stating her promissory estoppel claim are simply duplicative of her breach of contract claim. Thus, Mancuso's promissory estoppel claim fails.

C.      **Mancuso Fails to State a Claim for Tortious Interference**

Mancuso alleges that Defendants tortiously interfered with the Glamsquad Agreement by "coercing Ms. Mancuso to decline the Glamsquad Agreement." (Compl. ¶ 63). This allegation, however, does not state a claim for tortious interference with contract or, for that matter, with a prospective business relationship. Under New York law, which governs not only the Mancuso

agreements at issue and related claims but also the Glamsquad Agreement with which defendants

allegedly interfered, a claim for tortious interference requires plaintiff to allege "(1) the existence

of a valid contract between the plaintiff and a third party; (2) the defendant's knowledge of the

contract; (3) the defendant's intentional procurement *of the third party's breach of the contract*

*without justification*; (4) *actual breach of the contra*ct;  and (5) damages resulting therefrom."

*Maricultura del Norte, S. de R.L. de C.V. v. Umami Sustainable Seafood, Inc.*, 769 F. App'x 44,

54 (2d Cir. 2019) (summary order) (internal quotation marks and citations omitted; emphasis

added); *Kirch v. Liberty Media Corp.*, 449 F.3d 388, 401–02 (2d Cir. 2006) (same).

### 1.    Mancuso Does Not Plead That a Third Party Breached a Contract With Her or that L'Oréal Procured That Breach

Here, Mancuso asserts that L'Oréal interfered with her contract with Glamsquad.  She

does not, however, allege that L'Oréal communicated with Glamsquad.  And she does not allege,

as she must to state a claim for tortious interference, that Glamsquad, a third party, breached its

contract with her.  *See NBT Bancorp Inc. v. Fleet/Norstar Fin. Group, Inc.*, 87 N.Y.2d 614, 620,

641 N.Y.S.2d 581, 584 (1996) (stating that "our Court has repeatedly linked availability of the

remedy with a breach of contract"); *Leadsinger, Inc. v. Cole*, No. 05 Civ. 5606 (HBP), 2006 WL

2320544, at *12 (S.D.N.Y. Aug. 10, 2006) (dismissing claim because plaintiff failed to allege

relevant terms of contracts with third parties and how third parties breached those terms).

The fact that Defendants allegedly coerced *her* to *decline* a contract with Glamsquad

(Compl. ¶¶ 37, 63) does not state a claim for tortious interference with contract.

The Glamsquad Agreement itself expressly required Mancuso to represent and warrant

that "there is no other existing contract, obligation or duty on Contractor's part that is

inconsistent with this Agreement." (Cundiff Decl. Ex. C ¶ 4.2).  Under both the NCA and the

NCA Amendment, she was not able to do so—not because of any improper interference by

L'Oréal but by the terms of her contracts with L'Oréal.  Had she proceeded with the Glamsquad Agreement, *Mancuso* would have been in breach not only of her obligations to L'Oréal but also of her obligations to Glamsquad.  Any resulting withdrawal of the Agreement by Glamsquad would have been permitted by the Glamsquad Agreement.

Ironically, it was only *after* the acts in the Amended NCA complained of, when L'Oréal declined to continue to enforce the contractual non-compete restriction as to Glamsquad, that Mancuso could represent to Glamsquad that she was free of contrary contractual prohibitions as the Glamsquad Agreement required.

2. **Mancuso Does Not Plead That Defendants Engaged in Independently Wrongful Acts to Interfere With Her At-Will Glamsquad Agreement as the Law Requires**

The tortious interference claim also fails to the extent that it may be read as alleging tortious interference with prospective contractual relations because the contract with which Mancuso alleges Defendants interfered is the Glamsquad Agreement (Compl. ¶¶ 1, 26; Cundiff Decl. Ex. C), an at-will contract which specifies that it is open-ended and terminable on 30 days' notice for the parties' convenience.  (*Id.* ¶ 6.2).[4]  "[T]he interest one possesses under a contract terminable at will is merely an expectancy interest and therefore cannot be enforced."  *Dorsett-Felicelli, Inc. v. County of Clinton*, No. 1:04-CV-01141 (LEK/RFT), 2011 WL 1097859, at *4 (N.D.N.Y. Mar. 22, 2011) (citing *Guard–Life Corp. v. S. Parker Hardware Mfg. Corp.*, 50 N.Y.2d 183, 193, 428 N.Y.S.2d 628 (N.Y. 1980)); *see also NBT Bancorp Inc. v. Fleet/Norstar*

---

[4] The 30-day termination notice period in the Glamsquad Agreement does not change its at-will nature.  *See Seven Star Shoe Co. v. Strictly Goodies, Inc.*, 657 F. Supp. 917, 920 (S.D.N.Y. 1987) (dismissing tortious interference with contract claim where "the contract between Seven Star and Strictly Goodies, containing as it did a thirty-day cancel at will clause, was a contract that is 'terminable at will.'") (citing *Krim Cartage Co. v. Courier Services, Inc.,* 52 A.D.2d 831, 384 N.Y.S.2d 164 (N.Y. App. Div. 1976) (affirming dismissal of contract claim under NY law where contract was terminable at will on thirty days' notice, "Since the contracts were terminable at will, the discontinuance of the plaintiff's services, however induced, could not constitute a breach of contract")).

*Fin. Grp., Inc.*, 87 N.Y.2d 614, 620–21, 641 N.Y.S.2d 581 (1996) (observing that an expectancy interest in an at will contract is "not entitled to the same protection that would have been accorded a legally enforceable right to performance under the agreement").

Because Mancuso's interest in the Glamsquad Agreement was "a mere expectancy," she can only make out a tortious interference claim if she can plausibly allege that means Defendants employed to secure the purported breach were (1) independently wrongful, (2) an unlawful restraint of trade or (3) lacked a competitive motive. *See Guard–Life Corp.*, 50 N.Y.2d at 193. The allegations in Mancuso's Complaint do not meet this burden.

Aside from failing to allege that a third party breached its contract, Mancuso does not allege that Defendants' actions to induce any purported breach were independently wrongful, as required to state a claim. *Id.* at 194. All Mancuso alleges in this regard is that unspecified individuals working for Defendants "expressed disdain for other former [L'Oréal] employees that joined Glamsquad." (Complaint ¶ 63). Expressing "disdain" is not legally wrongful.

Nor does Mancuso allege that Defendants' actions were an unlawful restraint of trade— since her complaint arises from Defendants' release of her non-compete obligations as to Glamsquad, such an allegation could not stand[5]—or that Defendants lacked a competitive motive. "A competitor who lawfully induces termination of a contract terminable at will commits no ethical violation and does not produce a result contrary to the expectations of the parties." *Koeppel v. Schroder*, 122 A.D.2d 780, 782, 505 N.Y.S.2d 666, 669 (N.Y. App. Div. 1986). All that Mancuso alleges is that L'Oréal exercised its rights under a non-compete

---

[5] Such a complaint would be surprising given that even enforceable non-compete agreements that an employer elects to enforce are not favored by the courts because they are a restraint on trade. *See, e.g.*, *Reed, Roberts Assocs. v. Strauman*, 40 N.Y.2d 303, 307, 353 N.E.2d 590, 593 (1976). Releasing such a restriction could hardly be a restraint on trade.

agreement she alleges is valid and enforceable (Compl. ¶ 50).  Mancuso's claim for tortious interference with her at-will Glamsquad Agreement should be dismissed for failure to state a claim.

> **D.**   **Mancuso's Claim for Breach of the Covenant of Good Faith and Fair Dealing Is Duplicative of Her Breach of Contract Claim and Therefore Fails to State a Claim**

"Under New York law, parties to an express contract are bound by an implied duty of good faith, but breach of that duty is merely a breach of the underlying contract." *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 80 (2d Cir. 2002) (New York law "does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based on the same facts, is also pled."); *Anthem, Inc. v. Express Scripts, Inc.*, No. 16 CIV. 2048 (ER), 2017 WL 1134765, at *4 (S.D.N.Y. Mar. 23, 2017) ("While the conduct alleged in the causes of action for breach of the covenant of good faith and fair dealing need not be identical in every respect, it was enough that they arose from the same operative facts as the breach of contract claim in order to result in their dismissal.") (quoting *Mill Fin., LLC v. Gillett*, 122 A.D.3d 98, 104, 992 N.Y.S.2d 20 (1st Dep't 2014) (unpublished)).

Mancuso's claim for breach of the covenant of good faith and fair dealing relies on the same facts as her contract claim and adds nothing more.  It should be dismissed.

> **E.**   **Mancuso Fails to State a Claim for Violation of the New Jersey Wage and Hour Law**

In her fifth count, Mancuso claims that Defendants' failure to remit what she describes as contractual salary continuation payments for a twelve-month period following her resignation constitutes a violation of the New Jersey Wage and Hour Law, N.J.S.A. § 34:11-2 *et seq*. ("NJWHL").  (Compl. ¶¶ 73–77).  Mancuso's allegations fail because she does not allege facts

plausibly establishing that she has standing to bring a NJWHL Claim.  And even if she could show standing, the claim would still fail because the monies she attempts to place at issue—alleged post-employment contractual payments—are not "wages" under the statute, notwithstanding her conclusory claim to the contrary.

        1.      **Mancuso Does Not Plead She Is a New Jersey Employee**

Mancuso alleges in the Complaint that she is a resident of the State of South Dakota. (Compl. ¶ 2).  Her allegations that IT operates from New Jersey, that she reported to personnel located in New Jersey and that she attended periodic in-person meetings in New Jersey, (Compl. ¶¶ 7, 15), are not sufficient to plausibly show she has standing as an "employee" as required under the NJWHL.

The NJWHL "is only applicable to those working within New Jersey's geographical boundaries" and "regulates conduct that occurs within New Jersey—and not conduct occurring outside of the state's territorial borders." *Redick v. E. Mortg. Mgmt., LLC*, Civil Action No. 11-1260-GMS-CJB, 2013 WL 1089710, at *12 (D. Del. Mar. 15, 2013) (construing New Jersey law).  In *Redick*, the plaintiff was an out-of-state resident purporting to work for a New Jersey limited liability company headquartered in New Jersey that in turn oversaw multiple operations from within New Jersey.  *Id*. at *1.  The plaintiff's employment agreement contained a New Jersey choice of law provision (which Mancuso's does not).  *Id*. at *2.  Those facts were held not to be sufficient to make plaintiff an "employee" protected under the statute.  *See id.* at *10 ("the New Jersey Wage Law applies to 'employees working in New Jersey' and that it is '*[t]he location of the employment*, not the location of the employer, that governs the employee wage payment law that applies.'") (quoting 18 Marvin M. Goldstein & Stanley L. Goodman, New Jersey Practice Series: Employment Law § 6.1 & n. 2 (2d ed. 2011)).

Decisions from the District of New Jersey have also held that the NJWHL does not provide protection for employees who live and work outside New Jersey.  Most recently, in *Ortiz v. Goya Foods, Inc.*, Civil Action No. 19-19003 (SRC), 2020 WL 1650577, at *3 (D.N.J. Apr. 3, 2020), the D.N.J. dismissed a NJWHL claim where a plaintiff who lived and worked in Pennsylvania brought an action against his employer, a New Jersey-headquartered company, alleging that his required attendance at periodic meetings in New Jersey, serving as a sales rep for the New Jersey headquarters and a broad New Jersey choice of law provision in his employment agreement—not present here—were sufficient to impart standing.  *Id.*, 2020 WL 1650577, at *1.  The D.N.J. rejected that argument and dismissed the claims, concluding that the NJWHL does not apply extraterritorially.  *Id.* at *4 (citing *Lupian v. Joseph Cory Holdings, LLC*, 905 F.3d 127, 130 n.1 (3d Cir. 2018)).

The District of New Jersey observed that "[w]hile the New Jersey Supreme Court has not published a decision definitively resolving whether the NJWPL affords relief to out-of-state employees of New Jersey-based companies, the decisions of lower courts have suggested that it does not, " *Id.* at *3 (citing *Winslow v. Corporate Express, Inc.*, 364 N.J. Super. 128, 138 and n.2, 834 A.2d 1037 (N.J. Super Ct. App. Div. 2003) (expressing doubt in *dicta* that out-of-state plaintiff could bring NJWL claim against NJ-headquartered employer but declining to decide unbriefed issue)).[6]  The court further observed that the Law Division has expressed that "the focus of the NJWPL is the location of the employee, not the employer."  *Id*. (quoting *Mulford v.*

---

[6] While a different statute, the NJWPL is instructive here.  The New Jersey Supreme Court has remarked that because of "[t]he similarity of language" between the NJWPL and NJWHL, "any interpretation or implementation issues should be treated similarly."  *Hargrove v. Sleepy's, LLC*, 220 N.J. 289, 312, 106 A.3d 449, 463 (2015).  Consistent with that instruction, the District of New Jersey has noted that as to "[t]he extraterritorial application of the NJWPL *and* NJWHL . . . it is well settled that 'New Jersey law does not regulate conduct outside the state.'" *Lupian v. Joseph Cory Holdings, LLC*, 240 F. Supp. 3d 309, 313–14 (D.N.J. 2017) (emphasis added) (quoting *D'Agostino v. Johnson & Johnson, Inc.*, 133 N.J. 516, 539–40, 628 A.2d 305 (1993)), *aff'd*, 905 F.3d 127 (3d Cir. 2018).

*Computer Leasing, Inc.*, 334 N.J. Super. 385, 393, 759 A.2d 887 (N.J. Super Ct. Law. Div. 1999)).  The District of New Jersey concluded that "the available caselaw strongly militates against applying the NJWPL statute to encompass the claims of individuals who work outside of New Jersey," *Ortiz*, 2020 WL 1650577, *4.

In *Overton v. Sanofi-Aventis U.S., LLC*, the District of New Jersey adopted the reasoning in *Redick* and dismissed a NJWHL claim on the pleadings where the plaintiffs alleged they were not residents of New Jersey and did not work in New Jersey except for occasional visits into the state for training.  *Id.*, Civil Action No. 13-5535 (PGS), 2014 WL 5410653, at *5–6 (D.N.J. Oct. 23, 2014) (unpublished).  In doing so, the court rejected the plaintiffs' claim that the NJWHL should nonetheless apply because plaintiffs were supervised from New Jersey, were issued credentials as New Jersey employees and the address on their business cards reflected their employer's New Jersey address.  *Id*.

### 2.  Mancuso Does Not Plead Facts Establishing that the Alleged "Salary and Benefits Continuation" Payments She Places at Issue Are Wages Under the NJWHL

The NJWHL defines "wages" as "the direct monetary compensation for labor or services rendered by an employee, where the amount is determined on a time, task, piece, or commission basis *excluding* any form of supplementary incentives and bonuses which are calculated independently of regular wages and paid in addition thereto."  N.J.S.A. § 34:11-4.1(c) (emphasis added).  The payments Mancuso claims Defendants failed to pay her in violation of the NJWHL cannot be wages within the meaning of the law.  She clearly alleges that the monies were to be paid to her "*following her resignation*" (Compl. ¶ 74 (emphasis added)) "in exchange for Ms. Mancuso's promise to reject the Glamsquad offer."  (Compl. ¶ 1), rather than as compensation for any labor or services performed for Defendants.

16

The NJWHL does not apply to notice period payments "owed to an employee pursuant to a contractual obligation but not tethered to the performance of services by the employee." *Moran v. DaVita, Inc.*, Civil Action No. 06-5620 (JAP), 2009 WL 792074, at *18 (D.N.J. Mar. 23, 2009), *aff'd in relevant part*, 441 F. App'x 942 (3d Cir. 2011) (citing *Bintliff–Ritchie v. Am. Reinsurance Co.*, 285 Fed. Appx. 940, 943–44 (3d Cir.2008) (affirming dismissal of NJWHL claim for money allegedly owed under employer's incentive compensation plan, where the employer terminated plaintiff prior to the vesting of the award)); *see also Dubler v. Hangsterfer's Labs.*, Civil No. 09-5144 (RBK/JS), 2012 WL 714130, at *7 (D.N.J. Mar. 5, 2012) (granting summary judgment for employer on NJWHL claim where employer argued that "the relief sought by Plaintiff, namely severance benefits and a year-end bonus payment, does not fall within the [NJWHL's] definition of 'wages'").

The monies Mancuso seeks are not wages under the NJWHL.  The NJWHL claim must be dismissed.[7]

## F.   Mancuso Fails to State a Claim for Violation of the Conscientious Employee Protection Act

Mancuso alleges that Defendants retaliated against her in violation of the Conscientious Employee Protection Act ("CEPA"), N.J.S.A. § 34:19-1 *et seq*.  (Compl. ¶¶ 78–82.)  Her claim fails and should be dismissed because she lacks standing to bring a CEPA claim.  Further, the Complaint itself does not state a claim.

---

[7] That Mancuso refers to the compensation throughout her Complaint as "salary" is meaningless as, to paraphrase a Shakespearian injunction, "[t]he calling of a rose by another name certainly will not alter the odor." *Tutt v. Aufrecht*, 46 N.J. Super. 252, 255, 134 A.2d 536, 537 (N.J. Super Ct. Law Div. 1957).  It is axiomatic that the "salary" she alleges entitlement to cannot be construed as wages because it was not paid for services or labor rendered by an employee.  *See The Magnetic*, 293 F. 94, 97 (D.N.J. 1923) ("If his employer desires to pay him money, and indulge in the pleasant little fiction that it is for services as cook, whereas, there are no services as cook rendered by him, that money is certainly not wages – wages being . . . 'a compensation given to a hired person for services; price paid for labor; recompense; hire.'").

### 1.      Mancuso Lacks Standing to Bring a CEPA Claim

"CEPA is generally only available to New Jersey employees, as 'New Jersey law regulates conduct in New Jersey.'"  *Papalini v. Sensient Colors, Inc.*, Civil Action No. 11-6392, 2012 WL 1345353, at *4 (D.N.J. Apr. 18, 2012) (dismissing CEPA claim where plaintiff was a Pennsylvania resident and her employment agreement expressly referenced Pennsylvania law, finding that she was not a New Jersey employee, notwithstanding that plaintiff spent over 30% of her working hours in New Jersey); *Norris v. Harte–Hanks, Inc.*, 122 F. App'x. 566, 569 (3d Cir. 2004) (dismissing CEPA claims brought by New Jersey resident where plaintiff was employed in Pennsylvania and the conduct alleged, including plaintiff's termination, happened in Pennsylvania); *Parisi v. Wipro Ltd.*, No. 16 Civ. 1824 (PAE), 2016 WL 6905987, at *5 (S.D.N.Y. Nov. 23, 2016) (dismissing CEPA claim where plaintiff was based and primarily worked at employer's New York office; "That [plaintiff's] work sometimes took him to New Jersey did not make him a New Jersey employee.").

As with the NJWHL claim (*see* Section II.E., *supra*), Mancuso does not allege she was a New Jersey employee as required by CEPA.  Because Mancuso was not a New Jersey employee, her CEPA claim must be dismissed for want of standing.

### 2.      Mancuso's Threadbare Allegations in Support of Her CEPA Claim Are Insufficient to Survive a Rule 12(b)(6) Motion to Dismiss

Beyond lacking standing, Mancuso's CEPA count fails to sufficiently plead factual allegations that could survive a motion to dismiss.  She fails to make concrete, specific claims; she fails to allege a prohibited adverse action; she fails to overcome the fact that CEPA does not apply to claims pertaining to independent contractors; and she fails to allege a retaliatory act prohibited by CEPA.

To establish a *prima facie* case under CEPA, "a plaintiff must satisfy the following elements: (1) that he or she reasonably believed that his or her employer's conduct was violating either a law or a rule or regulation promulgated pursuant to law; (2) that he or she performed whistle-blowing activity described in N.J.S.A. § 34:19–3(a),(c)(1) or (c)(2); (3) an adverse employment action was taken against him or her; and (4) a causal connection exists between the whistle-blowing activity and the adverse employment action." *Kolb v. Burns*, 320 N.J. Super. 467, 476, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999). A CEPA claim must be dismissed at the pleading stage when the complaint fails to plead facts sufficient to establish any of the four elements of plaintiff's *prima facie* case. *See Brangan v. Ball Plastic Container Corp.*, Civil No. 11-5470 (RBK/KMW), 2012 WL 1332663, at *5 (D.N.J. Apr. 17, 2012) (unpublished).

The sum of Mancuso's CEPA claim is that after she had submitted her resignation to the Company (1) she brought to some unspecified individual at the Company's attention at some unspecified time and location her belief that for some unspecified reason the Company had offered her materially less as a post-employment consulting fee than was paid to some unspecified male consultant performing unspecified services (Compl. ¶¶ 23, 79); (2) the Company (again no identification of who or when) threatened her with some unspecified reputational harm if she *refused* to consult with L'Oréal (*id*. ¶ 24); and (3) the Company (yet again, no specifics as to who or when) "revoked" her post-employment consulting opportunity under discussion and threatened her in some unspecified manner after she disclosed she had secured a consulting opportunity with Glamsquad. (*Id*. ¶¶ 25–27, 79–80.)

Mancuso's allegations in support of her CEPA claim are so vague they fail to meet the basic standards of notice pleading to plausibly allege what act is actually being complained of or how those allegations show a *prima facie* case. The Third Circuit recognizes that "some

allegations, while not stating ultimate legal conclusions, are nevertheless so threadbare or speculative that they fail to cross the line between the conclusory and the factual." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 790 (3d Cir. 2016); *see also Yucis v. Sears Outlet Stores, LLC*, 813 F. App'x 780, 785 n.8 (3d Cir. 2020) (finding allegations in support of harassment claim "so general as to be conclusory, and is thus not entitled to the presumption of truth on a motion to dismiss."); *Stovall v. Grazioli*, Civil No. 16-4839 (RMB/KMW), 2019 WL 2417497, at *3 (D.N.J. June 10, 2019) (finding complaint failed to meet basic standards of notice pleading where it contained "generalized allegations" about discrimination without offering "any specifics").  Mancuso's allegations in support of her CEPA claim fall into that category and should be dismissed.

Even if Mancuso were permitted to re-plead allegations showing that she reasonably believed she blew the whistle about a violation of public policy rather than merely expressing a grievance about an unprotected private workplace dispute (which is currently unclear from her threadbare allegations),[8] her CEPA claim would *still* fail because the alleged adverse action taken—the revocation of an inchoate post-employment consulting opportunity never reduced to a

---

[8] "Vague and conclusory complaints, complaints about trivial or minor matters, or generalized workplace unhappiness are not the sort of things that the Legislature intended to be protected by CEPA." *Battaglia v. United Parcel Serv.*, 214 N.J. 518, 559, 70 A.3d 602, 627 (N.J. 2013); *Cuff v. Camden City Sch. Dist.*, No. 1:18-cv-13122-NLH-AMD, 2019 WL 1950400, at *7 n.4 (D.N.J.), *aff'd*, 790 F. App'x 413 (3d Cir. 2019) ("CEPA is not applicable to, for example . . . incidents that cause a 'bruised ego or injured pride' . . . complaints about a job title . . . [or] a job assignment the employee considers demeaning to his age and experience.") (citations omitted); *Michaelgreaves v. Gap, Inc.*, Civil Action No. 11-6283 (SDW), 2013 WL 257127, at *4 (D.N.J. Jan. 23, 2013) (granting Rule 12(b)(6) motion where complaint alleged "only issues with respect to himself [having adequate break times]" and not "concerns that relate to the public") (unpublished).  Blowing the whistle about alleged unlawful conduct which causes harm only to plaintiff is nothing "more than a private disagreement" devoid of "public ramifications" necessary to trigger CEPA liability.  *Turner v. Associated Humane Societies, Inc.*, 396 N.J. Super. 582, 594, 935 A.2d 825, 832–33 (N.J. Super Ct. App. Div. 2007) ("[A]n employer's attempt to impose an unreasonable non-compete clause on an employee does not 'implicate the public interest,' as it acts solely upon the individual employee . . . Likewise, an employee who claims employer retaliatory action for complaining about the unfair allocation of overtime does not have a claim under subsection (c)(3) because such a complaint deals with the employee's personal harm, not harm to the public.") (citing *Maw v. Advanced Clinical Commc'ns, Inc*., 179 N.J. 439, 445, 846 A.2d 604 (N.J. 2004) (other citation omitted)).

contract (Compl. ¶¶ 27, 80)—is not covered by the statute.  CEPA does not extend to independent contractors—precisely the potential arrangement Mancuso alleges Defendants took away from her after she had *already* tendered her resignation as an employee.  (*See id*. ¶ 19–20.) *See DaBronzo v. Roche Vitamins, Inc.*, 232 F. Supp. 2d 306, 314 (D.N.J. 2002) (rejecting CEPA claim brought by independent contractor; "[A] plain reading of the [CEPA] statute supports the conclusion that the legislature did not intend to include independent contractors within the definition of 'employee'").

Finally, Mancuso's claim that the revocation of what she styles as her separation consideration violates CEPA is likewise meritless because it was not a retaliatory act as defined by CEPA.  (*See* Compl. ¶ 80.)  CEPA defines "retaliatory action" as "the discharge, suspension or demotion of an *employee*, or other adverse *employment* action taken against an *employee in the terms and conditions of employment*."  *Donelson v. DuPont Chambers Works*, 206 N.J. 243, 257, 20 A.3d 384, 392 (N.J. 2011) (quoting N.J.S.A. § 34:19–2(e)) (emphasis added).  According to Mancuso's own allegations, the acts she complains of relate solely to Defendants' enforcement of *post*-employment contractual rights under the NCA *after* she had already tendered her resignation.  (Compl. ¶¶ 19, 10.)  Such conduct does not amount to retaliatory action under CEPA.

## CONCLUSION

Based on the foregoing, Defendants respectfully request that this Court dismiss all six counts from Mancuso's Complaint under Fed. R. Civ. P. 12(b)(6) with prejudice for failure to state a claim upon which relief can be granted.

Dated:  New York, New York
         February 16, 2021

Respectfully submitted,

PAUL HASTINGS LLP


By: _____
    Victoria A. Cundiff
    Julia G. Mix
    Brian M. Hayes
    victoriacundiff@paulhastings.com
    juliamix@paulhastings.com
    brianhayes@paulhastings.com
    200 Park Avenue
    New York, New York 10166
    Phone:  (212) 318-6000
    Fax:  (212) 319-4090

Attorneys for Defendants
L'OREAL USA, INC., and
IT COSMETICS, LLC

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that, on this 16th day of February, 2021, I caused a true and exact copy of the foregoing DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS to be filed electronically and served by mail on anyone unable to accept electronic filing.  Notice and copies of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF System.

Dated: February 16, 2021

_____
Victoria A. Cundiff