# EXHIBIT C

## INDEPENDENT CONTRACTOR SERVICES AGREEMENT

**THIS AGREEMENT** is made as of January 24, 2020, ("**Effective Date**") by and between **GLAMSQUAD, INC.** and its successors or assignees ("**Company**") and the undersigned **RACHAEL MANCUSO** ("**Contractor**").

1. **ENGAGEMENT OF SERVICES**. Company may from time to time submit a Statement of Work (**"SOW"**) to Contractor substantially in the form of **Exhibit A** to this Agreement. Subject to the terms of this Agreement, Contractor will provide the services set forth in each SOW accepted by Contractor (the "**Project(s)**") by the completion dates set forth therein. The manner and means that Contractor chooses to complete the Projects are in Contractor's sole discretion and control. Contractor shall perform the services necessary to complete the Projects in a timely and professional manner consistent with industry standards and at a location, place and time that Contractor deems appropriate. Company agrees to provide the equipment, tools, and other materials as may be necessary for Contractor to complete the Projects, and will make its facilities and equipment available to Contractor when necessary.

2. **COMPENSATION**.

2.1 **Fees.** Company will pay Contractor the fee specified in each SOW as Contractor's sole compensation for the Project, provided such Project meets the terms of the SOW and this Agreement and is of a quality consistent with industry standards. Contractor shall be responsible for all expenses incurred in performing services under this Agreement, except as set forth in the SOW. Upon termination of this Agreement for any reason prior to completion of an SOW, Company will pay Contractor fees and expenses on the basis stated in the SOW for work which is then in progress, within thirty (30) days of the later of Contractor's invoice and the effective date of such termination.

2.2 **Invoicing**. Unless otherwise provided in the applicable SOW, (a) payment to Contractor of undisputed fees will be due fourteen (14) days following Company's receipt of an invoice which contains accurate records of the work performed sufficient to document the invoiced fees; and (b) Contractor will submit invoices to Company upon completion of the milestones specified in the applicable SOW or, if no such milestones are specified, on a bi-weekly basis for services performed in the previous two week period.

3. **INDEPENDENT CONTRACTOR RELATIONSHIP**. Contractor's relationship with Company will be that of an independent contractor, and nothing in this Agreement should be construed to create a partnership, joint venture, or employer-employee relationship. Contractor (a) is not the agent of Company; (b) is not authorized to make any representation, contract, or commitment on behalf of Company; (c) will not be entitled to any of the benefits that Company makes available to its employees, such as group insurance, profit-sharing or retirement benefits (and waives the right to receive any such benefits); and (d) will be solely responsible for all tax returns and payments required to be filed with or made to any federal, state, or local tax authority with respect to Contractor's performance of services and receipt of fees under this Agreement. If applicable, Company will report amounts paid to Contractor by filing Form 1099-MISC with the Internal Revenue Service, as required by law. Contractor agrees to accept exclusive liability for complying with all applicable state and federal laws, including laws governing self-employed individuals, if applicable, such as laws related to payment of taxes, social security, disability, and other contributions based on fees paid to Contractor under this Agreement. Company will not withhold or make payments for social security, unemployment insurance or disability insurance contributions, or obtain workers' compensation insurance on Contractor's behalf. Contractor hereby agrees to indemnify and defend Company against any and all such taxes or contributions, including penalties and interest. Contractor agrees to provide proof of payment of appropriate taxes on any fees paid to Contractor under this Agreement upon reasonable request of Company.

4. **INTELLECTUAL PROPERTY RIGHTS**.

4.1 **Confidential Information**. Contractor agrees that during the term of this Agreement and thereafter, it (a) will not use or permit the use of

Confidential Information (defined below) in any manner or for any purpose not expressly set forth in this Agreement; (b) will not disclose, lecture upon, publish, or permit others to disclose, lecture upon, or publish any such Confidential Information to any third party; (c) will limit access to Confidential Information to Contractor personnel who need to know such information in connection with their work for Company; and (d) will not remove any tangible embodiment of any Confidential Information from Company's premises without Company's prior written consent. "**Confidential Information**" includes, but is not limited to, all information related to Company's business and its actual or anticipated research and development, including without limitation (i) (a) trade secrets, inventions, mask works, ideas, processes, formulas, computer source and object codes, data, databases and data collections, programs, other works of authorship, know-how, improvements, discoveries, developments, designs and techniques; (ii) information regarding products or plans for research and development, marketing, sales and business plans, budgets, financial statements, licenses, contracts, prices and costs, suppliers, and customers; (iii) information regarding the skills and compensation of Company's employees, contractors, and any other service providers of Company; (iv) the existence of any business discussions, negotiations, or agreements between Company and any third party; and (v) all such information related to any third party that is disclosed to Company or to Contractor during the course of Company's business (**"Third Party Information"**). Notwithstanding the foregoing, it is understood that Contractor is free to use information, which is generally known in the trade or industry, information which is not gained as a result of a breach of this Agreement, and Contractor's own skill, knowledge, know-how, and experience.

4.2        **Competitive or Conflicting Engagements**. Contractor agrees, during the term of this Agreement, not to enter into a contract or accept an obligation from another Company or Brand (the "Competitor") that is in direct competition with the Company, specifically such that Competitor is a hair-care focused brand. Additionally, if Contractor seeks to pursue an Engagement with a non-hair-care focused brand that is a beauty brand, Contractor will disclose such relationship such that Contractor and Company can mutually decide if a conflict exists. Contractor represents and warrants that there is no other existing contract, obligation or duty on Contractor's part that is inconsistent with this Agreement. Contractor further agrees not to disclose to Company, bring onto Company's premises, or induce Company to use any confidential information that belongs to anyone other than Company or Contractor. In addition, Contractor agrees that, during the term of this Agreement, it will not perform, or agree to perform, any services for any third party that engages, or plans to engage, in any business or activity competitive with that of Company.

4.3        **Ownership of Work Product.** Contractor agrees that any and all Work Product shall be the sole and exclusive property of Company. As used in this Agreement, the term "**Work Product**" means any invention that is solely or jointly conceived, made, reduced to practice, or learned by Contractor in the course of any services performed for Company or with the use of materials of Company during the term of this Agreement. Contractor agrees to disclose promptly in writing to Company, or any person designated by Company, all Work Product.

5.        **CONTRACTOR REPRESENTATIONS AND WARRANTIES**. Contractor hereby represents and warrants that (a) the Work Product will be an original work of Contractor and any third parties will have executed assignment of rights reasonably acceptable to Company prior to being allowed to participate in the development of the Work Product; (b) the Work Product will fully conform to the requirements and terms set forth in the SOW; (c) to the best of Contractor's knowledge, neither the Work Product nor any element or development thereof will infringe or misappropriate the intellectual property rights of any third party; (d) neither the Work Product nor any element thereof will be subject to any restrictions or to any mortgages, liens, pledges, security interests, or encumbrances; (e) Contractor will not grant, directly or indirectly, any rights or interest whatsoever in the Work Product to third parties; (f) Contractor has full right and power to enter into and perform this Agreement without the consent of any third party; (g) Contractor will comply with all laws and regulations applicable to Contractor's obligations under this Agreement, will refrain from any

unethical conduct, and will maintain high standards of professionalism; and (h) should Company permit Contractor to use any of Company's equipment, or facilities during the term of this Agreement, such permission shall be gratuitous and Contractor (i) shall be responsible for any injury to any person (including death) or damage to property arising out of use of such equipment or facilities; (ii) shall perform all services during Company's normal business hours, unless Company otherwise specifically requests; and (iii) shall comply with Company's then-current access policies and procedures, including those pertaining to safety, security, anti-harassment, and confidentiality.

6.  **TERMINATION**.

6.1     **Term.** The term of this Agreement (the "**Term**") shall start on the Effective Date and continue thereafter until terminated pursuant to this section.

6.2     **Termination without Cause**. Company may terminate this Agreement without cause at its convenience upon thirty (30) days' prior written notice to Contractor. Contractor may terminate this Agreement at any time that there is no uncompleted SOW in effect upon thirty (30) days' prior written notice to Company. Company will pay Contractor only those fees and expenses related to services requested by Company and actually performed during such notice period, as specified in the SOW.

6.3     **Termination with Cause.** Either party may terminate this Agreement immediately in the event that the other party has materially breached the Agreement and fails to cure such breach within ten (10) days of receipt of notice by the non-breaching party, setting forth in reasonable detail the nature of the breach. Company may also terminate this Agreement immediately in its sole discretion in the event of Contractor's material breach of the section titled Intellectual Property Rights. Company will pay Contractor only those fees and expenses related to services requested by Company and actually performed during such notice period, as specified in the SOW.

6.4     **Return of Company Property**. Upon termination of the Agreement or upon Company's request at any other time, Contractor will deliver to Company all of Company's property, equipment, and documents, together with all copies thereof, and any other material containing or disclosing any Work Product, Third Party Information or Confidential Information of Company and certify to Company in writing that Contractor has fully complied with this obligation Contractor further agrees that any property situated on Company's premises and owned by Company is subject to inspection by Company personnel at any time with or without notice.

6.5     **Survival**. The following provisions shall survive termination of this Agreement: Sections and Subsections titled Intellectual Property Rights, Contractor Representations and Warranties, Return of Company Property, Survival, and General Provisions.

7.  **GENERAL PROVISIONS.**

7.1     **Governing Law and Venue.** This Agreement and any action related thereto will be governed, and interpreted by and under the laws of the State of New York, without giving effect to any conflicts of laws principles that require the application of the law of a different state. Contractor hereby expressly consents to the personal jurisdiction and venue in the state and federal courts for the county in which Company's principal place of business is located for any lawsuit filed there against Contractor by Company arising from or related to this Agreement.

7.2     **Severability**. If any provision of this Agreement is, for any reason, held to be invalid or unenforceable, the other provisions of this Agreement will remain enforceable and the invalid or unenforceable provision will be deemed modified so that it is valid and enforceable to the maximum extent permitted by law.

7.3     **No Assignment**. This Agreement, and Contractor's rights and obligations herein, may not be assigned, subcontracted, delegated, or otherwise transferred by Contractor without Company's prior written consent, and any attempted assignment, subcontract, delegation, or transfer in violation of the foregoing will be null and void. The terms of this Agreement shall be binding upon assignees.

**7.4** **Notices**. Each party must deliver all notices or other communications required or permitted under this Agreement in writing to the other party at the address listed on the signature page, by courier, by certified or registered mail (postage prepaid and return receipt requested), or by a nationally-recognized express mail service. Notice will be effective upon receipt or refusal of delivery. If delivered by certified or registered mail, any such notice will be considered to have been given five (5) business days after it was mailed, as evidenced by the postmark. If delivered by courier or express mail service, any such notice shall be considered to have been given on the delivery date reflected by the courier or express mail service receipt. Each party may change its address for receipt of notice by giving notice of such change to the other party.

**7.5** **Injunctive Relief**. Contractor acknowledges that, because its services are personal and unique and because Contractor will have access to Confidential Information of Company, any breach of this Agreement by Contractor would cause irreparable injury to Company for which monetary damages would not be an adequate remedy and, therefore, will entitle Company to injunctive relief (including specific performance). The rights and remedies provided to each party in this Agreement are cumulative and in addition to any other rights and remedies available to such party at law or in equity.

**7.6** **Waiver**. Any waiver or failure to enforce any provision of this Agreement on one occasion will not be deemed a waiver of any other provision or of such provision on any other occasion.

**7.7** **Export**. Contractor agrees not to export, directly or indirectly, any U.S. technical data acquired from Company or any products utilizing such data, to countries outside the United States, in violation of the United States export laws or regulations.

**7.8** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed an original and all of which shall be taken together and deemed to be one instrument.

**7.9** **Entire Agreement**. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between the parties with respect to such subject matter. No modification of or amendment to this Agreement, or any waiver of any rights under this Agreement, will be effective unless in writing and signed by Contractor and Chief Executive Officer of the Company. The terms of this Agreement will govern all SOWs and services undertaken by Contractor for Company. In the event of any conflict between this Agreement and a SOW, the terms of the SOW shall govern, but only with respect to the services set forth therein.

IN WITNESS WHEREOF, the parties have caused this Independent Contractor Services Agreement to be executed by their duly authorized representatives.

| COMPANY: GLAMSQUAD | CONTRACTOR: |
|---|---|
| *Linda Esposito* (DocuSigned) | *Rachael Mancuso* (DocuSigned) |
| **Linda Esposito** | **Rachael Mancuso** |
| 1/30/2020 | 2/1/2020 |

Address: 54 W. 21st Street, NY, NY 10010

4

# EXHIBIT A

## STATEMENT OF WORK

This Statement of Work ("**SOW**") is incorporated into the Independent Contractor Services Agreement by and between Company and Contractor. This SOW describes services and Work Product to be performed and provided by Contractor pursuant to the Agreement. If any item in this SOW is inconsistent with the Agreement, the terms of this SOW will control, but only with respect to the services to be performed under this SOW.

1. **Scope of Services**:

In connection with the Company's impending launch on QVC, the Company wishes to hire Contractor to provide brand development strategy as it relates to QVC (offers, products, and positioning). Contractor will also serve as the primary point of contact for the retailer and provide all services required to execute as such. Tasks to include:

- Identify product assortment and pricing to maintain desired margins
- Work with QVC to determine buy size
- Inventory forecasting
- Sales forecasting
- Story development with guests—watch airings to provide after-the-fact feedback
- Work with Ops teams to quickly fill reorders for opportunities, replace items with shipping issues, etc.
- Manage all communication with QVC (QVC is a VERY communication intensive business due to being live and able to change direction with little notice—nothing at QVC is final until it's over!)
- Work with internal & QVC teams on claims selection, asset recommendations, model selection, demo ideas, social/email promotion, etc.

2. **Compensation**:

For the services provided the Contractor will be paid $175 per hour. Consultant will work approximately 80-100 hours per month on the project, with any work above 80 hours per month to be pre-approved by the Company.

3. **Expenses**.

Company will reimburse Contractor for out of pocket expenses incurred by Contractor in connection with this SOW with any expense of $100 requiring pre-approval by the Company. Additionally, Contractor will provide the Company with appropriate receipts or other relevant documentation for all such expenses as part of any submission for reimbursement. Any expenses over $300 will be paid directly by the Company whenever feasible.

GLAMSQUAD, INC.
*DocuSigned by:*
*Linda Esposito*
28748A0223774D4...
**Linda Esposito**
1/30/2020

Contractor:
*DocuSigned by:*
*Rachael Mancuso*
A0A57A82878849C...
2/1/2020

Address: 54 W. 21st Street, NY, NY 10010