# EXHIBIT F

**Not for Publication**

**UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY**

| | |
|---|---|
| RACHAEL MANCUSO,<br><br>       *Plaintiff*,<br><br>v.<br><br>L'OREAL USA, INC., and IT COSMETICS, LLC,<br><br>       *Defendants*. | Civil Action No. 20-5701<br><br>**OPINION & ORDER** |

**John Michael Vazquez, U.S.D.J.**

       This case involves allegations that Defendants L'Oréal USA, Inc. ("L'Oréal") and IT Cosmetics, LLC ("IT") deliberately interfered with Plaintiff Rachael Mancuso's consulting opportunities after Plaintiff left her job with Defendants.[1] Currently pending before this Court is Defendants' motion to transfer venue or, in the alternative, to dismiss Plaintiff's Complaint for failure to state a claim. D.E. 8. Plaintiff filed a brief in opposition, D.E. 11, to which Defendants replied, D.E. 12. The Court reviewed the parties' submissions[2] and decided the motion without oral argument pursuant to Fed. R. Civ. P. 78(b) and L. Civ. R. 78.1(b). For the reasons set forth below, Defendants' motion to transfer is **GRANTED**. Because this case will be transferred, the Court does not reach Defendants' motion for failure to state a claim.

---

[1] At times, the parties refer to Defendants as a single entity. To be clear, Plaintiff worked for IT for the duration of her employment. During this time, L'Oréal acquired IT, and it is presently a "business unit" of L'Oréal. Compl. ¶¶ 1, 8, 11.

[2] Defendants' brief in support of their motion to dismiss (D.E. 8-7) will be referred to as "Defs. Br."; Plaintiff's opposition (D.E. 11) will be referred to as "Plf. Opp."; and Defendants' reply (D.E. 12) will be referred to as "Defs. Reply."

I. **BACKGROUND**

Plaintiff is a former executive at IT. During her employment, Plaintiff largely worked from her home in South Dakota but attended "periodic in-person meetings in Jersey City," where IT is based.[3] Compl. ¶ 1-2, 15. When Plaintiff began working for IT in 2013, Plaintiff and IT entered into a Non-Competition and Confidentiality Agreement (the "NCA"). *Id.* ¶¶ 8-9. Pursuant to the NCA, for the two years following her separation from IT, Plaintiff was prohibited from engaging in competitive business or soliciting IT's existing or potential customers. *Id.* ¶ 10. Plaintiff also agreed not to disclose certain confidential information. Hayes Decl, Ex. A, ¶ 4.

L'Oréal acquired IT in 2016. Compl. ¶ 11. In 2017, Plaintiff and L'Oréal entered into the Employee Retention Agreement (the "Retention Agreement"), which "incentivized Ms. Mancuso to remain employed with L'Oréal and forgo other available professional opportunities" for a two-year period. *Id.* ¶ 12; Hayes Decl., Ex. B, ¶¶ 1.9, 2.1. On January 31, 2020, after her obligations under the Retention Agreement ended, Plaintiff provided two-weeks-notice of her intent to resign. Compl. ¶¶ 19-20. L'Oréal subsequently attempted to keep Plaintiff's services and asked her to act as a consultant. Plaintiff "agreed to a non-exclusive arrangement" through which she would provide a certain amount of services in exchange for a consulting fee. *Id.* ¶ 21.

Plaintiff then disclosed that she had secured consulting work with Glamsquad, "another business in the cosmetics industry," and provided a copy of the Glamsquad Consulting Services Agreement (the "Glamsquad Agreement") to Defendants. *Id.* ¶¶ 25-26. In response, Defendants revoked their consulting agreement with Plaintiff and threatened to enforce the NCA. *Id.* ¶¶ 27, 29. Defendants then "promised [Plaintiff] that it would offer her salary and benefits continuation

---

[3] The facts are derived from Plaintiff's Complaint and the relevant contracts, which Defendants included as exhibits to their motion. D.E. 1, 8.

2

if she rejected the Glamsquad agreement" for twelve months after her employment with Defendants (the "Separation Agreement"). *Id.* ¶¶ 30-31. Plaintiff maintains that this was communicated to her in a February 10, 2020 email and there was "no expectation between the parties that any written document would be required to memorialize the terms." *Id.* ¶¶ 32-34. Plaintiff agreed to the terms of the Separation Agreement, and in reliance, rescinded the Glamsquad Agreement. *Id.* ¶¶ 36-37.

Plaintiff alleges that Defendants failed to pay the first installment of the Separation Agreement. *Id.* ¶ 41. Then, on March 9, 2020, Defendants informed Plaintiff that they decided not to honor the Separation Agreement and threatened to enforce the NCA. *Id.* ¶¶ 43-44. Plaintiff maintains that the NCA is legally unenforceable. *Id.* ¶ 44.

Plaintiff filed her Complaint on May 8, 2020, asserting contract-based claims, a tortious interference claim, a Conscientious Employee Protection Act ("CEPA") claim, and a New Jersey Wage and Hour violation claim. D.E. 1. Defendants then filed the instant motion. Defendants contend that Plaintiff filed this matter in the "wrong" venue because of a mandatory forum selection clause in the NCA. Plaintiff counters that the NCA does not apply in this matter.[4] Plf. Opp. at 18-23.

## II. LEGAL STANDARD

When a matter is filed in a proper venue, a federal district court may transfer the case to a different venue pursuant to 28 U.S.C. § 1404(a). *In re McGraw-Hill Global Educ. Holdings LLC*, 909 F.3d 48, 57 (3d Cir. 2018). A forum selection clause "may be enforced through a motion to

---

[4] As noted, Defendants seek in the alternative to dismiss the Complaint pursuant to Rule 12(b)(6), which Plaintiff opposes.

3

transfer under [Section] 1404(a)." *Atl. Marine Const. Co., Inc. v. U.S. Dist. Court for the W.D. Tex.*, 571 U.S. 49, 59 (2013).

Section 1404(a) provides that "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). Because a valid forum selection clause "should be given controlling weight in all but the most exceptional cases," the traditional Section 1404(a) analysis is altered if there is an operative forum selection clause. *Atl. Marine*, 571 U.S. at 51. First, a plaintiff's choice of forum merits no weight. *In re McGraw-Hill*, 909 F.3d at 57. Second, the court should not consider the private interest factors, and "[i]nstead, 'a district court may consider arguments about the public-interest factors only.'" *Id.* (quoting *Atl. Marine*, 571 U.S. at 64). Third, when a case is transferred due to a forum selection clause, "a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules." *Id.* (quoting *Atl. Marine, Inc.*, 571 U.S. at 64).[5] "The § 1404(a) movant bears the burden of persuasion." *Id.*

"Federal law controls the question of whether to enforce a forum selection clause." *In re McGraw-Hill*, 909 F.3d at 58; *see also Phillips v. Audio Active Ltd.*, 494 F.3d 378, 384 (2d Cir. 2007) ("[F]ederal law should be used to determine whether an otherwise mandatory and applicable forum clause is enforceable . . . because enforcement of forum clauses is an essentially procedural issue."). But the interpretation of a forum selection clause "is an analytically distinct concept from the enforceability of that clause." *Id.* Therefore, courts use state law "to determine the scope of a

---

[5] For a Section 1404(a) analysis that does not involve a forum selection clause, a court weighs multiple private and public interest factors. *MaxLite, Inc. v. ATG Elecs, Inc.*, 193 F. Supp. 3d 371, 392 (D.N.J. 2016). Moreover, a plaintiff's choice of forum, a private interest factor, "should rarely be disturbed." *Id.* at 393 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)).

4

forum selection clause—that is, 'whether the claims and parties involved in the suit are subject to the clause.'" *Id.* (quoting *Collins v. Mary Kay, Inc.*, 874 F.3d 176, 180 (3d Cir. 2017)).

**III.   ANALYSIS**

   **A.  The Forum Selection Clause Applies**

Before addressing whether the forum selection clause covers Plaintiff's claims, the Court must determine whether the forum selection clause is operative. As discussed, Defendants maintain that Plaintiff's claims in this matter arise from the NCA and the Separation Agreement. Consequently, Defendants continue, the parties are bound by the forum selection clause in the NCA because it was incorporated into the Separation Agreement. Defs. Br. at 15. Plaintiff contends that the NCA was superseded by the Retention Agreement. Plf. Opp. at 22-23. The NCA and the Retention Agreement both contain a New York choice of law clause. Hayes Decl, Ex. A, ¶ 17; Ex. B, ¶ 4.10. Accordingly, the Court applies New York law to the parties' arguments as to the applicability and scope of the forum selection clause.

"New York law gives full effect to integration and merger clauses." *Kreiss v. McCown DeLeeuw & Co.*, 37 F. Supp. 2d 294, 301 (S.D.N.Y. 1999). But "[e]ven in the absence of an integration and merger clause, . . . a subsequent contract regarding the same subject matter supersedes the prior contract." *Id.* (quoting *Indep. Energy Corp. v. Trigen Energy Corp.*, 944 F. Supp. 1184, 1195-96 (S.D.N.Y. 1996)). However, "a subsequent contract not pertaining to 'precisely the same subject matter' will not supersede an earlier contract unless the subsequent contract has definitive language indicating it revokes, cancels or supersedes that specific prior contract." *Creditsights, Inc. v. Ciasullo*, No. 05-9345, 2007 WL 943352, at *6 (S.D.N.Y. Mar. 29, 2007) (quoting *Globe Food Servs. Corp. v. Consol. Edison Co. of N.Y., Inc.*, 184 A.D.2d 278, 280 (N.Y. Super. Ct.1992)).

5

In *Kreiss*, the defendants argued that a term sheet was superseded by a later executed Stockholders Agreement. *Kreiss*, 37 F. Supp. 2d at 301. The Stockholders Agreement contained a merger and integration clause providing that "[t]his Agreement contains the entire agreement between the parties hereto with respect to the subject matter hereof and supersedes all prior arrangements or understandings . . . with respect hereto." *Id.* The Stockholder Agreement generally governed stockholders' rights but was "silent with respect to how much equity and options Plaintiffs were to receive." *Id.* The plaintiffs' equity and stock options were addressed in the Term Sheet. Thus, the *Kreiss* court concluded that "[b]ecause the subject matter of the Stockholders Agreement does not cover the specific award to Plaintiffs of equity and stock options, the agreement does not supersede the Term Sheet in that regard." *Id.*

Here, the NCA and the Retention Agreement deal with different subjects. The NCA addresses Plaintiff's obligations after her employment with Defendants ends.[6] Compl. ¶ 10; *see also* Hayes Decl., Ex. A. In comparison, the Retention Agreement "incentivized Ms. Mancuso to remain employed with L'Oréal and forgo other available professional opportunities" for a two-year period. Compl. ¶ 12; Hayes Decl., Ex. B, ¶¶ 1.9, 2.1. As Plaintiff herself pleads, "[t]he Retention Agreement did not contain any post-employment restrictive covenant with L'Oréal." Compl. ¶ 14. Because the NCA and the Retention Agreement address different aspects of Plaintiff's employment with Defendants, the Retention Agreement does not supersede or invalidate any portion of the NCA.

---

[6] Although L'Oréal was not a party to the NCA, the NCA provides that "[a]ll rights and obligations of the Company pursuant to this Agreement shall inure to the benefit of and shall be binding upon the successors and assigns of the Company." Hayes Decl, Ex. A, ¶ 15. Accordingly, L'Oréal appears to have assumed IT's rights under the NCA when it acquired IT in 2016. Compl. ¶ 11.

6

Plaintiff counters that the NCA is no longer in effect because of the integration clause in the Retention Agreement. Plf. Opp. at 22-23. The integration clause provides in relevant part:

> This Agreement sets forth the entire agreement of the Parties hereto *in respect of the subject matter contained herein* and, except as otherwise provided herein, supersedes all prior agreements . . . , and any prior agreement of the Parties hereto *in respect of the subject matter contained herein* is hereby terminated and canceled.

Hayes Decl., Ex. B, ¶ 4.5 (emphases added). As noted, Plaintiff herself pleads that the Retention Agreement does not address post-employment restrictions. Compl. ¶ 14. Plaintiff also acknowledges that the Retention Agreement does not mention the NCA.[7] Plf. Opp. at 22. Although Plaintiff believes that this silence means that the Retention Agreement supersedes the NCA, the Retention Agreement itself and New York law provide otherwise. Because the contracts address different aspects of Plaintiff's employment, the Retention Agreement did not supersede the NCA. *See Kreiss*, 37 F. Supp. 2d at 301.

Finally, the cases that Plaintiff's cites in support of her argument are distinguishable. In *Dewitt Stern Group, Inc. v. Eisenberg*, the court determined that a second employment agreement superseded an earlier employment contract. 257 F. Supp. 3d 542, 582 (S.D.N.Y. 2017). But unlike the two contracts here, both contracts at issue in that case covered the defendant's "employment conditions while at DeWitt, and the agreements contain the same subjects, like compensation, termination, and indemnification." *Id.* Here, the NCA addressed post-employment restrictions while the Retention Agreement governed Plaintiff's continued employment for a two-year period. Next, in both *Health-Chem Corp. v. Baker* and *Citigifts, Inc. v. Pechnik*, the second contracts

---

[7] Plaintiff also omits that the Retention Agreement further provides that "nor shall anything in this Agreement limit or otherwise affect any rights [Plaintiff] may have under any contract or agreement with the Company." *Id.* ¶ 4.1.

7

expressly superseded the prior agreements at issue. *See Health-Chem Corp. v. Baker*, 915 F.2d 805, 811 (2d Cir. 1990); *Citigifts, Inc. v. Pechnik*, 112 A.D.2d 832, 834 (N.Y. Sup. Ct. 1985).

Having found that the NCA remained an operative agreement even after the Retention Agreement, the Court next addresses whether the forum selection clause is incorporated into the Separation Agreement. Defendants argue that the Separation Agreement was simply an amendment to the NCA. Defs. Br. at 15. Plaintiff maintains that the Separation Agreement was an entirely separate and new contract. Plf. Opp. at 23.

"Under New York law, an existing contract may be modified by a subsequent agreement." *In re S.E. Nichols Inc.*, 120 B.R. 745, 748 (Bankr. S.D.N.Y. 1990). "The effect of a modified contract is the production of one new contract which consists not only of the terms subsequently agreed upon, but as many of the terms of the original contract as have not been abrogated by the modification." *Id.*; *see also In re Residential Cap., LLC*, 531 B.R. 25, 48 (Bankr. S.D.N.Y. 2015) (explaining that the original agreement "continued to govern the parties' relationship even after" the amendment). Courts look at the substance of the new agreement to determine if it is an amendment or a separate contract. To qualify as an amendment, the later contract "must do more than label itself as an amendment or incorporate terms and provisions from the earlier agreement; it must alter original terms and provisions in the first agreement." *Id.* That is what occurred here.

As discussed, the terms of the Separation Agreement were set forth in an email. Compl. ¶ 32. Plaintiff indicates that she agreed to the terms. *Id.* ¶ 36. In that email, an employee of Defendants explicitly mentions the NCA and states that Defendants were going to enforce the NCA for one year instead of two years. Hayes Decl., Ex. D. Specifically, the email states that given the similarity between Defendants and Glamsquad, "we have made the decision to enforce your non-compete for a period of twelve (12) months. This is a reduction from the two (2) year

8

period set forth in your agreement." *Id.* Given the clear reference to the NCA, the Court determines that the Separation Agreement was intended to, and did, modify the NCA. Consequently, the remainder of the NCA that was not addressed in the Separation Agreement, including the forum selection clause, was unaffected by the Separation Agreement.

Plaintiff maintains that the Separation Agreement cannot be construed as an amendment because the NCA provides that it "may not be amended except in writing by the parties hereto," Hayes Decl., Ex. A, ¶ 17, and there was not a separate writing here.[8] Plf. Opp. at 10. An email can constitute a signed writing. *European Sch. of Econ. Found. v. Teknoloji Holdings A.S.*, No. 08-2235, 2011 WL 1742017, at *5 (S.D.N.Y. May 4, 2011) (citing *Stevens v. Publicis, S.A.*, 50 A.D.3d 253, 254-55 (N.Y. App. Div. 2008)). In addition, Plaintiff pleads that there was no expectation between the parties that the terms of the Separation Agreement would be formally memorialized in a separate document. Compl. ¶ 34.

Plaintiff also contends that the Separation Agreement cannot be construed as an amendment because Defendants did not have authority to unilaterally amend the NCA. Plf. Opp. at 10. Plaintiff, however, pleads that *she accepted* the terms of the Separation Agreement. Compl. ¶ 36. Plaintiff also asserts that Defendants agreed to pay her salary and provide her benefits for a year, *id.* ¶ 31, which constitutes sufficient consideration for the amendment. There is no indication therefore, that the Separation Agreement was not a valid contract.

For the foregoing reasons, the parties are bound by the forum selection clause.

---

[8] While not addressing Defendants' motion to dismiss for failure to state a claim, the Court notes that Plaintiff's arguments that the Separation Agreement is not an amendment apparently undermines her allegations that Defendants breached the Separation Agreement.

### B. The Forum Selection Clause Covers Plaintiff's Claims

Under New York law, there is a distinction between, on the one hand, "mandatory forum selection clauses, which provide that the specific forum is the exclusive or sole forum in which the matter may be heard," and, on the other, "permissive clauses, which confer jurisdiction on the specified forum to hear the matter but do not limit the parties' rights to sue in another forum having jurisdiction over the defendants." *Walker, Truesdell, Roth & Assocs., Inc. v. Globeop Fin. Servs., LLC*, 43 Misc. 1230(A), 2013 WL 8597474, at *5 (N.Y. Sup. Ct. May 27, 2013). Forum selection clauses are usually considered mandatory "if they provide that a specified forum 'shall' hear a matter or that the forum is 'exclusive.'" *Id.*; *see also Exclusive*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/exclusive (last visited Feb. 1, 2021) (defining "exclusive" as "limited to only one person or group of people"). A mandatory forum selection clause will be enforced, "[a]bsent a showing" that enforcement would be unreasonable. *Id.*

The NCA contains a mandatory forum selection clause; it provides as follows:

> The Company and Employee also agree and hereby submit *to the exclusive* personal jurisdiction and *venue* of the courts of New York County, New York and the United States District Court for the Southern District of New York with respect to all matters arising from or relating to this Agreement.

Hayes Decl., Ex. A, ¶ 17 (emphases added). Plaintiff does not argue that enforcing the forum selection clause would be unreasonable. Thus, the Court will enforce the forum selection clause.

Next, the Court must determine whether Plaintiff's claims are encompassed by the forum selection clause. "When determining the scope of a forum selection clause, the Court 'examine[s] the substance of th[e] claims, shorn of their labels,' and relates the substance of the claims 'to the precise language of the clause.'" *Prod. Resource Grp., L.L.C. v. Martion Prof'l, A/S*, 907 F. Supp.

10

2d 401, 412 (S.D.N.Y. 2012) (quoting *Phillips*, 494 F.3d at 388-90). In this instance, the forum selection clause includes the words "relating to," which encompasses broad applicability. Courts describe the phrase "as equivalent to the phrases 'in connection with' and 'associated with,' and synonymous with the phrases 'with respect to' and 'with reference to.'" *Id.* at 414. Plaintiff's claims are all associated with her ability to work for a competitor and whether Defendants breached the NCA, as amended by the Separation Agreement. Accordingly, Plaintiff's claims relate to the agreements and are governed by the forum selection clause.

### C. Modified § 1404(a) Factors

Because the forum selection clause governs this dispute, the Court will apply the modified Section 1404(a) analysis set forth in *Atlantic Marine*. *See In re McGraw-Hill*, 909 F.3d at 57. As a result, the Court gives Plaintiff's choice of forum no weight. *Id.* In addition, the Court will not consider the parties' arguments as to the private interest factors. Instead, the Court only considers arguments about the public-interest factors. *Id.*

The public interest factors include: (1) enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulties in the two fora resulting from court congestion; (4) local interests in deciding local controversies at home; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879-90 (3d Cir. 1995). A party "acting in violation of the forum-selection clause . . . bear[s] the burden of showing that public-interest factors overwhelmingly disfavor a transfer." *Atl. Marine Constr. Co., Inc.*, 571 U.S. at 67.

The public interest factors weigh in favor of transfer. The first factor is neutral as a judgment from either district could easily be registered in another district. *See SI Power LLC v.*

11

*Pathway Holdings Mgmt. V, LLC*, No. 15-6101, 2016 WL 7130920, at *9 (D.N.J. Dec. 7, 2016). The third factor is neutral because courts in either district can effectively manage this case. The sixth factor is also neutral. Although the Complaint requires application of New Jersey's Wage and Hour laws and CEPA, New York's choice of law rules apply (*In re McGraw-Hill*, 909 F.3d at 57) and the NCA contains a New York choice of law provision, Hayes Decl., Ex. A, ¶ 17, which applies to Plaintiff's contract based and tort claims. The second and fourth factors, however, weigh slightly favor of a New Jersey forum as IT is based in New Jersey and it appears that Plaintiff's in-person interactions occurred in New Jersey. But Plaintiff herself is not a New Jersey resident and for the most part, worked remotely from South Dakota. Regardless, these factors alone are not enough to tip the scales in favor of retaining jurisdiction as "a valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Const. Co., Inc.*, 571 U.S. at 63. To that end, the fifth factor weighs strongly in favor of enforcing the forum selection clause because of New Jersey and New York public policy in favor of enforcing contractual provisions, including forum selection clauses. *See McMahon v. City of Newark*, 951 A.2d 185, 196-97 (N.J. 2008) (setting forth "maxim that courts cannot make contracts for parties. They can only enforce the contracts which the parties themselves have made") (internal quotation omitted); *159 MP Corp. v. Redbridge Bedford, LLC*, 128 N.E.3d 128, 132 (N.Y. 2019) ("Freedom of contract is a deeply rooted public policy in this state.") (internal quotation omitted). As a result, the Court concludes that in light of the forum selection clause, transfer is appropriate under § 1404(a).

### IV. CONCLUSION

For the reasons stated above, and for good cause shown,

**IT IS** on this 1st day of February, 2021,

12

**ORDERED** that Defendants' motion to transfer (D.E. 8) is **GRANTED**; and it is further

**ORDERED** that the Clerk's Office shall transfer this matter to the United States District Court for the Southern District of New York; and it is further

**ORDERED** that Defendants' alternate request to dismiss this matter pursuant to Federal Rule of Civil Procedure 12(b)(6) (D.E. 8) is **DENIED without prejudice**; and it is further

**ORDERED** that the Clerk of the Court shall close this matter.

_____
John Michael Vazquez, U.S.D.J.

13